■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW J. HARGETT, Appellant. [784 NYS2d 197]—

Mercure, J.P. Appeal from a judgment of the County Court of Essex County (Halloran, J.), rendered October 12, 1999, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), assault in the second degree, criminal possession of a weapon in the third degree and menacing in the second degree.

After two altercations with his estranged wife (hereinafter the victim), defendant was indicted for the crimes of burglary in the first degree (five counts), assault in the first degree (three counts), criminal possession of a weapon in the third degree (two counts), unlawful imprisonment in the first degree and menacing in the second degree. Following a *Huntley* hearing at which two police officers testified that defendant was read his *Miranda* rights several times, including at the time of arrest, County Court denied defendant's motion to suppress statements made after his arrest. A jury thereafter convicted defendant of burglary in the first degree (two counts), assault in the second degree, criminal possession of a weapon in the third degree and menacing in the second degree. County Court sentenced him to concurrent terms of seven years in prison on each of the burglary and assault convictions, as well as $2^{1}/_3$ to 7 and one-year prison terms on the criminal possession of a weapon and menacing convictions, respectively. Defendant appeals and we now affirm.

Initially, defendant argues that his burglary and menacing convictions were not supported by legally sufficient evidence and were against the weight of the evidence. We disagree. Defendant's burglary convictions arose from the incident in which he stabbed the victim at the house of her former paramour, Jamie Scharpf. Defendant asserts that he was "licensed or privileged" (Penal Law § 140.00 [5]) to enter Scharpf's residence because he had Scharpf's permission to enter the premises

(*see People v Graves*, 76 NY2d 16, 20 [1990]) and, thus, cannot be found guilty of burglary in the first degree (*see* Penal Law § 140.30 [2], [3]). Defendant notes that Scharpf told him to "[c]ome and get [the victim because he didn't] want her [t]here." Scharpf also testified, however, that after knocking, defendant entered his house without invitation or permission before he or the victim answered the door. Scharpf stated that defendant held a knife and threatened to stab both him and the victim.

Viewing this evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we conclude that "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). Although Scharpf's testimony was somewhat contradictory in that he implied on cross-examination that defendant did not have permission to knock his door down but could have turned the handle and come in if the door was unlocked, "[r]esolution of any credibility issue contained in the testimony is the function of a jury, [which] is free to accept or reject all or part of any testimony" (*People v Brockway*, 277 AD2d 482, 484 [2000] [citation omitted]).

We reach a similar conclusion with respect to the menacing conviction. At trial, the victim testified that while she was at Scharpf's home several months prior to the stabbing incident, defendant entered with a gun, threatened to kill her and himself, and left her "scared for everybody, me and everybody." Indeed, defendant admitted that he threatened to shoot the victim during the incident and then shot at her car. Again, this testimony provides sufficient evidence to support this conviction (*see People v Bleakley, supra* at 495; *see also* Penal Law § 120.14 [1]) and, to the extent that it conflicted with Scharpf's or defendant's testimony, the jury was free to resolve any credibility issues that arose (*see People v Brockway, supra* at 484). Further, upon our independent review and giving deference to the jury's opportunity to view the witnesses and observe their demeanor, we find that the convictions on the burglary and menacing charges were not against the weight of the evidence (*see People v Bleakley, supra* at 495; *People v Luck*, 294 AD2d 618, 620 [2002], *lv denied* 98 NY2d 699 [2002]).

Turning to defendant's pro se arguments, he first asserts that he was deprived of the effective assistance of counsel because his trial counsel failed to request that County Court submit to the jury the issue of the voluntariness of defendant's admis-

sions to the State Police after his arrest. While defendant now avers that he was not read his *Miranda* rights, he did not dispute before County Court the State Troopers' testimony that he was read and understood those rights. Rather, at trial, defendant testified that he could not remember whether he had been read his *Miranda* rights. Where voluntariness is not put in issue by evidence adduced at trial sufficient to raise a dispute, a defendant is not entitled to a voluntariness charge (*see People v Cefaro*, 23 NY2d 283, 288-289 [1968]; *see generally People v Mateo*, 2 NY3d 383, 416 n 20 [2004], *cert denied* — US —, 124 S Ct 2929 [2004]).

Also unavailing is defendant's contention that trial counsel improperly failed to apprise County Court of a posttrial recantation that would have negated the elements of some of the charges. This statement, however, is contained in the preliminary sentencing investigation and, thus, was properly before County Court at the time of sentencing. Defendant's further assertion that trial counsel should have made a "motion based on [this] recantation" is not persuasive. Generally, "meaningful representation is not compromised where counsel fails to pursue a 'potentially futile endeavor' " (*People v May*, 301 AD2d 784, 787 [2003], *lv denied* 100 NY2d 564 [2003], quoting *People v Gonsa*, 220 AD2d 27, 32 [1996], *lv denied* 89 NY2d 923 [1996]), and "[a] victim's postjudgment affidavit [that] merely impeaches or contradicts [his or] her former testimony and amounts to a recantation . . . is insufficient, by itself, to set aside a judgment of conviction" (*People v Saunders*, 301 AD2d 869, 872 [2003], *lv denied* 100 NY2d 542 [2003]). Similarly, defendant fails to demonstrate " 'the absence of strategic or other legitimate explanations' " for the remainder of his challenges to counsel's assistance (*People v Benevento*, 91 NY2d 708, 712 [1998], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]; *accord People v Taylor*, 1 NY3d 174, 176 [2003]).

Moreover, we note that trial counsel filed a comprehensive omnibus motion and demand for discovery, made numerous objections and vigorously cross-examined the People's witnesses during both the *Huntley* hearing and defendant's nine-day trial, made a well-researched motion to dismiss the indictment at the close of the People's case, obtained acquittals on the majority of the crimes charged in the indictment and advocated compellingly on defendant's behalf during the sentencing hearing. Under these circumstances, we conclude that "defense counsel's actions were within the reasonably objective range of performance and . . . provided defendant with meaningful representation" (*People v Taylor, supra* at 175-176).

Finally, defendant contends that County Court erred when it submitted verdict sheets to the jury setting forth distinguishing elements of the assault and burglary charges. While "absent defendant's consent, it is error for the court to supply a jury with any written material containing statutory elements or terms of the charged offenses" (*People v Martell*, 91 NY2d 782, 785 [1998]; *see People v Damiano*, 87 NY2d 477, 482-483 [1996]), the record reveals that defendant consented to the verdict sheets submitted to the jury.

We have considered defendant's remaining contentions and conclude that they are either unpreserved for our review or lacking in merit.

Crew III, Spain, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.