■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER MALCOLM, Appellant. [902 NYS2d 264]—

Peters, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered October 2, 2008, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, attempted assault in the first degree, reckless endangerment in the first degree and menacing in the second degree.

Unhappy with the repairs the victim made to his automobile, defendant entered the victim's repair shop armed with a loaded semi-automatic rifle, took aim at the victim and pulled the trigger. When the rifle misfired, the victim rushed defendant and attempted to wrestle the rifle away. Upon hearing the victim's shouts and observing the two struggling with one another on the ground, the victim's employee called the police and secured

the weapon until the police arrived minutes later. Defendant was indicted for attempted murder in the second degree, attempted assault in the first degree, assault in the second degree, reckless endangerment in the first degree and menacing in the second degree and, following a jury trial, was acquitted of the charge of assault in the second degree and found guilty on the remaining counts. Sentenced to an aggregate prison term of 10 years to be followed by five years of postrelease supervision, he appeals.

Defendant first contends that his convictions for attempted murder and attempted assault were against the weight of the evidence, specifically attacking the element of intent.*

We disagree. A defendant's intent may be inferred from his actions and the surrounding circumstances (see People v Bonney, 69 AD3d 1116, 1118 [2010], lv denied 14 NY3d 838 [2010]; People v Nash, 64 AD3d 878, 881 [2009]; People v Booker, 53 AD3d 697, 703 [2008], lv denied 11 NY3d 853 [2008]).

At trial, evidence was presented regarding the ongoing dispute between defendant and the victim regarding the work performed on defendant's car. Defendant admitted that, following his conversation with the victim earlier in the day, he was an "emotional mess" and made a sudden decision to do something as he had a "deep-seeded hatred" for the victim. He drove to the victim's garage armed with a loaded rifle, a bayonet strapped to his bare chest and five loaded magazines holding over 100 rounds of ammunition. As he approached, he drove slowly past the victim's garage to ensure that the victim was alone, parked his van approximately 350 feet from the garage, left the engine running and secreted the gun by his side. According to the victim, defendant then entered the premises and, from a distance of approximately six feet away, squatted down, pointed the rifle at the victim's chest and pulled the trigger. The victim further testified that, while he and defendant struggled following the gun's misfire, defendant unsuccessfully attempted to reach for the bayonet while repeatedly stating "you ruined my life." Upon their arrival, police discovered a round in the chamber of the rifle, over 60 rounds of ammunition at the scene of the confrontation and additional ammunition and weaponry

---

* Although defendant also argues that the verdict on these counts, as well as the reckless endangerment count, were not supported by legally sufficient evidence, he failed to properly preserve that claim for our review by making a particularized motion to dismiss at trial directed at the specific deficiencies in the evidence now challenged (see People v Gray, 86 NY2d 10, 19 [1995]; People v Gonzalez, 64 AD3d 1038, 1039 [2009], lv denied 13 NY3d 796 [2009]; People v Portee, 56 AD3d 947, 948-949 [2008], lv denied 12 NY3d 820 [2009]).

in defendant's vehicle. In light of the background of the dispute, the sheer quantity of ammunition with which defendant armed himself, his surreptitious conduct prior to arriving at the victim's garage and his actions upon confronting the victim, the jury could readily infer that defendant harbored the requisite intent (*see People v Baker*, 27 AD3d 1006, 1009 [2006], *lv denied* 7 NY3d 785 [2006]; *People v Mullings*, 23 AD3d 756, 758 [2005], *lv denied* 6 NY3d 756 [2005]; *People v Rivers*, 17 AD3d 934, 936 [2005], *lv denied* 5 NY3d 768 [2005]). Although defendant testified that he brought the gun to the victim's repair shop merely to "scare the hell out of [the victim] who put [him] through . . . hell," that his finger was not on the trigger and that the safety was on the entire time, the jury was free to reject this version of events (*see People v Baker*, 27 AD3d at 1009; *People v Hargett*, 11 AD3d 812, 814 [2004], *lv denied* 4 NY3d 744 [2004]). According ing due deference to the jury's credibility determinations (*see People v Romero*, 7 NY3d 633, 645 [2006]), we are satisfied that the verdict on these counts was supported by the weight of the evidence (*see People v Stewart*, 68 AD3d 1438, 1439 [2009], *lv denied* 14 NY3d 773 [2010]; *People v Baker*, 27 AD3d at 1009).

We are similarly unpersuaded by defendant's assertion that the guilty verdict on the reckless endangerment count was against the weight of the evidence. Relying on *People v Davis* (72 NY2d 32, 35-37 [1988]), defendant contends that the evidence that the safety was on, which prevented the weapon from being fired, precluded a finding that his conduct created a grave risk of death. Unlike *Davis*, however, the operability of the gun here was not a factual impossibility. Quite to the contrary, a firearms expert testified that the rifle was fully operable and explained that, even if the safety had been engaged, as defendant claimed, it could be easily disengaged simply by moving one finger forward from the trigger. Considering the ease by which the safety could be disengaged, the victim's testimony that defendant reloaded the weapon and ejected a round—while still pointing the weapon at him—as he rushed to subdue defendant, and the uncontradicted proof that the two thereafter struggled for control of the loaded rifle, there was ample support for a finding that defendant recklessly created a grave risk of death "by creating a situation where any sudden movement by the [victim] or defendant could readily have resulted in the accidental discharge of the weapon" (*People v Chrysler*, 85 NY2d 413, 416 [1995]; *see People v Graham*, 14 AD3d 887, 889 [2005], *lv denied* 4 NY3d 853 [2005]; *compare People v Davis*, 72 NY2d at 35-37). Evaluating the evidence in a neutral light and weighing the conflicting inferences that can be drawn therefrom (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Bleakley*,

69 NY2d 490, 495 [1987]), we cannot conclude that the verdict on this count was against the weight of the evidence.

Defendant's claim that the jury verdict finding him guilty of both attempted murder in the second degree and reckless endangerment in the first degree is inconsistent was not preserved for our review by appropriate objection before the jury was discharged, at a time when the alleged error could have been cured (see People v Alfaro, 66 NY2d 985, 987 [1985]; People v Pearson, 69 AD3d 1226, 1227 [2010]; People v Young, 296 AD2d 588, 589 [2002], lv denied 99 NY2d 541 [2002]). In any event, since these counts were premised on separate and distinct acts by defendant, we would nonetheless find that the jury's verdict was not inconsistent (see People v Lewis, 46 AD3d 943, 946-947 [2007]; People v Rouse, 4 AD3d 553, 557 [2004], lv denied 2 NY3d 805 [2004]; compare People v Slater, 270 AD2d 925, 925 [2000], lv denied 95 NY2d 858 [2000]).

Nor are we persuaded by defendant's contention that County Court improperly denied his application, made less than one week prior to trial, for substitute assigned counsel. An indigent criminal defendant must demonstrate "good cause" for the appointment of substitute counsel, such as a conflict of interest or other irreconcilable conflict, and is not entitled to the appointment of successive lawyers at his or her option (see People v Sides, 75 NY2d 822, 824 [1990]; People v Manley, 70 AD3d 1125, 1125-1126 [2010]; People v Smith, 231 AD2d 815, 815-816 [1996]). "In determining whether good cause exists, a trial court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance" (People v Linares, 2 NY3d 507, 510 [2004]; see People v Medina, 44 NY2d 199, 208 [1978]).

In his written request, defendant claimed that his assigned counsel was not adequately prepared, failed to review relevant documents pertinent to his defense and did not have his "interests at heart." At the next court appearance, defendant was given an opportunity to articulate his concerns about counsel, and County Court adequately evaluated the reasons for his eve of trial request. Contrary to defendant's contention, further inquiry was not required because his conclusory and unsubstantiated assertions did not "raise a serious possibility of irreconcilable conflict" (People v Tenace, 256 AD2d 928, 930 [1998] [internal quotation marks omitted], lv denied 93 NY2d 902 [1999], cert denied 530 US 1217 [2000]; see People v Breedlove, 61 AD3d 1120, 1121 [2009], lv denied 12 NY3d 913 [2009]; People v Dunton, 19 AD3d 808, 809 [2005], lv denied 5 NY3d

805 [2005]). Moreover, in denying defendant's request, County Court noted that defendant had succeeded in dismissing his prior assigned counsel on the eve of trial some three months earlier based on similar complaints, and found that defendant's request was yet another attempt to delay the proceedings. Given the timing of the motion and absent a compelling reason for the substitution, we will not disturb County Court's determination made pursuant to its sound discretion (*see People v Nelson*, 7 NY3d 883, 884 [2006]; *People v Wright*, 5 AD3d 873, 875 [2004], *lv denied* 3 NY3d 651 [2004]; *People v Nelson*, 1 AD3d 796, 797-798 [2003], *lv denied* 1 NY3d 631 [2004]).

Finally, to the extent that defendant's pro se supplemental brief advances a claim of ineffective assistance of counsel, we find it to be without merit. Most of defendant's assertions pertain to matters outside the record on appeal and the proper recourse is a CPL article 440 motion (*see People v Smith*, 63 AD3d 1301, 1304 [2009], *lv denied* 13 NY3d 862 [2009]; *People v Echavarria*, 53 AD3d 859, 863-864 [2008], *lv denied* 11 NY3d 832 [2008]). Notwithstanding the remaining claimed deficiencies, counsel's vigorous representation of defendant is reflected by his appropriate motion practice, effective evidentiary objections, thorough cross-examination of the People's witnesses, coherent theory in defense of the charges and ability to secure an acquittal on one count of the indictment (*see People v Conklin*, 63 AD3d 1276, 1277 [2009], *lv denied* 13 NY3d 859 [2009]; *People v Scanlon*, 52 AD3d 1035, 1040 [2008], *lv denied* 11 NY3d 741 [2008]; *People v Lewis*, 46 AD3d at 947). Taken as a whole, the record reveals that defendant was afforded meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Black*, 65 AD3d 811, 815 [2009], *lv denied* 13 NY3d 905 [2009]).

Defendant's remaining contentions raised in his pro se supplemental brief have been reviewed and found to be lacking in merit.

Cardona, P.J., Mercure, Kavanagh and Garry, JJ., concur. Ordered that the judgment is affirmed.